## BRANHAM v. FIDELITY & DEPOSIT CO. OF MARYLAND.

(Court of Appeals of District of Columbia. Submitted April 21, 1924. Decided February 2, 1925.)

No. 4058.

1. **Principal and surety ⚖➡190(7)—Evidence of settlement between bank and cashier's surety held to establish prima facie case in surety's action against cashier.**

In action by surety on bank cashier's bond against cashier for amount paid bank because of shortage in cashier's account, evidence showing settlement with bank and payment to bank of amount thereof established prima facie case, in absence of attempt by cashier to challenge good faith of settlement and payment.

2. **Principal and surety ⚖➡190(7)—Testimony held admissible in action by cashier's surety against cashier.**

In action by surety on bank cashier's bond against cashier for amount paid bank because of shortage in cashier's account, testimony that cashier said that "if it wasn't for something he would kill himself and get out of it," and that the bank had settled with the surety company, held admissible.

Appeal from Supreme Court of District of Columbia.

Action by the Fidelity & Deposit Company of Maryland against Joseph S. Branham. Judgment for plaintiff, and defendant appeals. Affirmed.

P. H. Marshall, of Washington, D. C., for appellant.

E. C. Dutton, T. L. Jeffords, and F. S. Key-Smith, all of Washington, D. C., for appellee.

Before ROBB, and VAN ORSDEL, Associate Justices, and BARBER, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice. Appellant, defendant below, was cashier of the Farmers' Exchange bank of Stillmore, Ga., and obtained for the bank from appellee a bond of indemnity in the sum of $10,000. The application for the bond, forming a part of the contract, contained a certification by appellant as to the truth of all answers made to interrogatories, obligated him to pay the premium or fees on the bond, "and all loss, costs, charges, suits, damages, counsel fees and expenses of whatever kind or nature, which said company shall or may, for any cause, at any time, sustain or incur, or be put to for or by reason or in consequence of said company having entered into or executed said bond," and further provided:

"And I do further agree that the vouchers, or other evidence of payment of such loss paid by said company to the employer under such obligation, together with vouchers or other evidence of payment of all costs and expenses whatever, incurred by said company in adjusting said loss, shall be taken as conclusive evidence against me and my estate of the fact and extent of my liability under said obligation to the said company."

While this bond was in force, the bank made claim against the appellee company because of an alleged shortage in the account of appellant as cashier. After the company's inspector had made an examination of the books of the bank, disclosing a shortage of approximately $15,000, a settlement was made whereby the company paid the Bank $6,000. This suit was instituted in 1921 to recover from the cashier the money thus paid. There were offered in evidence the application and bond, and a letter of appellant, under date of February 23, 1913, relative to the shortage. That letter contained the following:

"I am in receipt of your letter of the 21st. I cannot express how surprised I am at the contents. All that I can say is that they are absolutely untrue, and I have never made a statement that would infer that it was my intention to fight the bank and keep everything I have. * * * In fact, I went down to Dublin last week to see Col. Larsen with reference to trying to get the bond company to pay the bond and reimburse them with the property. I did this before I received your letter, and before I heard that the Bank had the impression that I was going to fight them. * * * I am willing and will be only too glad to turn over everything I have and anything I can get if a settlement can be made. In conclusion, will say that you have certainly been misinformed, and I am perfectly willing to do anything that can be done to satisfy every one; I mean, of course, anything in reason. I don't think I should go to jail about it, for it is not necessary."

The voucher showing the payment to the bank by the company also was introduced in evidence. In addition, the inspector who made the investigation for the company resulting in the settlement was permitted, over objection and exception by appellant, to testify as to the examination. Over further objection and exception, the president and director of the bank at the time of the shortage was permitted to testify to an interview he had with appellant concerning the shortage. At the close of the plaintiff's case, the defendant moved for a directed verdict, upon the ground that the evidence was insufficient to support a verdict, and the further ground that there was no sufficient evidence to support the allegations of the declaration as to alleged acts of dishonesty, or of omission or commission in bad faith, by defendant. This motion being denied, the defendant announced that he would offer no testimony, and the case was submitted to the jury; a verdict for $6,000 being returned.

[1, 2] The evidence showing a settlement with and payment to the bank made out a prima facie case, and, in the absence of any attempt to challenge the good faith of that settlement and payment, justified a recovery, without the introduction of any other evidence on the part of the plaintiff. It therefore is unnecessary to determine whether a proper basis had been laid for the testimony of the inspector for the surety company. The testimony of the president of the bank concerning an interview with the cashier, in which the cashier is alleged to have said "that if it wasn't for something he would kill himself and get out of it," and that the bank had settled with the surety company, was clearly admissible, although unnecessary; a prima facie case having been made.

It follows that the judgment must be affirmed, with costs.

Affirmed.